The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Young. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employment relationship existed between the plaintiff-employee and defendant-employer at all relevant times herein.
3. The defendant-employer is a duly qualified self-insured with RSKCo. as the servicing agent at all relevant times herein.
4. At all relevant times herein, the plaintiff-employee's average weekly wage was $523.04, yielding a compensation rate of $348.71.
5. The parties stipulated to the plaintiff-employee's medical records from Dr. David J. Burke, Northeast Orthopaedics and Northeast Medical Center.
6. The issues to be determined by the Commission are:
 a) Whether the plaintiff-employee sustained an injury by accident arising out of the course of his employment with the defendant-employer on February 24, 2000?
 b) Whether the plaintiff-employee is entitled to any benefits under the North Carolina Workers Compensation Act?
7. The deposition of Dr. David J. Burke is a part of the evidentiary record in this case.
 ***********
Based on the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing, the plaintiff-employee was 52 years old and worked for the defendant-employer as a pipe fitter.
2. As a part of his assigned job duties for the defendant-employer, the plaintiff-employee assisted in loading and unloading material and equipment used at job sites. Prior to February 24, 2000, the plaintiff-employee was able to perform his job duties in a usual and customary manner without any significant physical problems.
3. On the morning of February 24, 2000, while at work, the plaintiff-employee was helping unload a flat bed truck that had transported some equipment, including stainless steel kitchen hoods, to a construction site in Rock Hill, South Carolina. The kitchen hoods were six feet tall, eight to nine feet wide and five feet in length. Due to their large size, these items were transported in wooden crates and unloaded at the job site by a crane.
4. As part of his job duties on the morning of February 24, 2000, the plaintiff-employee climbed on top of one of these crates to secure it to the crane. After performing this function, the plaintiff-employee was beginning to climb down from the top of the crate when the crane operator began raising one end of the crate into the air, startling the plaintiff-employee, who jumped down from the crate and landed in an awkward position and everything "went black". This fall resulted in pain in the plaintiff-employee's left knee and low back.
5. Following this incident, the plaintiff-employee had difficulty in walking and told his job foreman, Randy Lefler, that he had the breath knocked out of him and thought he jarred his back when jumping from the crate. The plaintiff-employee completed his shift, but his left knee became increasingly sore as the day progressed. The plaintiff-employee returned to work on February 25, 2000, but had to leave at lunchtime due to the severe pain in his left knee. After February 25, 2000, the plaintiff-employee was unable to return to work full-time.
6. The plaintiff-employee contacted Northeast Orthopaedics, an orthopedic clinic that had provided medical treatment to him in the past and obtained medication. As a result of this phone call, the plaintiff-employee obtained prescription medication and obtained an appointment with Dr. David J. Burke, an orthopedic surgeon. Although the plaintiff-employee had previously received medical care and treatment from Northeast Orthopaedics, he had never received medical treatment for either his left or right knee.
7. The plaintiff-employee testified at the hearing that he made numerous calls to the defendant-employer to report his work-related injury by accident, but the plaintiff-employee got either no answer or Randy Moose's voice mail. The plaintiff-employee also testified that on or about March 3, 2000, he again reported his injury to Randy Lefler, the defendant-employer's Foreman. The plaintiff-employee further testified that soon after the plaintiff-employee's March 6, 2000 doctor visit, the plaintiff-employee also saw Randy Moose at church and again informed him that the plaintiff-employee's knee problem was the result of the February 24, 2000 fall from the crate.
8. Following his initial evaluation of the plaintiff-employee on March 6, 2000, Dr. Burke ordered an MRI scan which documented objective findings of a significant tear of the medial meniscus. In his deposition, Dr. Burke opined that the plaintiff-employee experienced an extensive tear of the medial meniscus with an accompanying bone bruise consistent with and most likely the result of a recent trauma and acute injury.
9. Dr. Burke's assessment was confirmed during arthroscopic surgery on April 5, 2000. At that time, Dr. Burke examined the surface of the medial meniscus and found that the nature of the tear indicated a recent, traumatic incident. Dr. Burke further opined that this type of incident was consistent with the objective findings observed in the MRI scan and identified during arthroscopic surgery.
10. Having weighed the testimony of both parties, the Full Commission gives more weight to the testimony of the plaintiff-employee.
11. The competent evidence in the record establishes that the plaintiff-employee sustained an injury by accident to his knee arising out of the course of his employment with the defendant-employer on February 24, 2000 and that the plaintiff-employee made repeated efforts to have the opportunity to complete the necessary workers' compensation paperwork related to his injury.
12. The plaintiff-employee has been unable to perform his work as a pipe fitter since March 8, 2000 as a result of pain and limited use of his left knee both prior to and subsequent to his surgery. He continues to be under restrictions limiting him to at best, light duty employment, per Dr. Burke.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The plaintiff-employee sustained an injury by accident to his left knee arising out of the course of his employment with the defendant-employer on February 24, 2000 when he had to unexpectedly jump from the side of a crate, landing in an awkward manner which caused an acute and traumatic injury to his left knee. N.C. GEN. STAT § 97-2(6).
2. As a result of the plaintiff-employee's injury by accident, the plaintiff-employee is entitled to temporary total disability compensation benefits at the rate of $348.71 beginning March 23, 2000 and continuing until he is able to return to work or until further Order of the Commission. N.C. GEN. STAT § 97-29.
3. As a result of the plaintiff-employee's compensable injury by accident, the plaintiff-employee is entitled to temporary partial disability compensation at a rate of two-thirds of the difference between the plaintiff-employee's pre-injury average weekly wage of $523.04 and his post-injury average weekly wage continuing until such time as the plaintiff-employee's earnings meet or exceed his pre-injury wage, but not to exceed 300 weeks from the date of injury. The exact time periods shall be determined by counsel for both parties based upon defendant-employer's company records. N.C. GEN. STAT § 97-30.
4. Plaintiff-employee is entitled to have the defendant-employer pay for all medical expenses incurred or to be incurred, for so long that such examinations, evaluations and treatment may reasonably be required to effect a cure, provide relief or lessen the plaintiff-employee's period of disability. N.C. GEN. STAT. § 97-25; N.C. GEN. STAT. §97-2(19).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to a reasonable attorney's fees hereinafter approved, the defendant-employer shall pay to plaintiff-employee temporary total disability beginning March 23, 2000 through the present and continuing until the plaintiff-employee returns to work or until further Order of the Industrial Commission. Compensation due which has accrued shall be paid to the plaintiff-employee in a lump sum, subject to the attorney's fees hereinafter provided.
2. Subject to a reasonable attorney's fee hereinafter provided, the defendant-employer shall pay to the plaintiff-employee temporary partial disability compensation at a rate of two-thirds of the difference between the plaintiff-employee's pre-injury average weekly wage of $523.04 and his post-injury average weekly wage continuing until such time as the plaintiff-employee's earnings meet or exceed his pre-injury wage, but not to exceed 300 weeks from the date of injury. The exact time periods shall be determined by counsel for both parties based upon defendant-employer's company records. Compensation due which has accrued shall be paid to the plaintiff-employee in a lump sum, subject to the attorney's fees hereinafter provided.
3. Defendant-employer shall pay all medical expenses incurred or to be incurred, by plaintiff-employee as a result of plaintiff-employee's injury sustained February 24, 2000, for so long that such examinations, evaluations and treatment may reasonably be required to effect a cure, provide relief and will tend to lessen the period of plaintiff-employee's disability.
4. As the plaintiff-employee has not yet reached the end of the healing period for his injury, this Opinion and Award does not address this issue. However, in the event that the parties should be unable to agree on the amount of compensation for permanent partial impairment, if any, for his injuries, which may be due, either party may request a hearing from the Commission to resolve this issue.
5. A reasonable attorney's fee of 25% of the compensation due plaintiff-employee under Paragraph 1 of this Award is approved for plaintiff-employee's counsel. Twenty-five percent of the compensation due plaintiff-employee shall be deducted from that sum and paid directly to plaintiff-employee's counsel. Thereafter, every fourth compensation check shall be deducted from the sum due plaintiff-employee and paid directly to plaintiff-employee's counsel. Consideration and designation of this attorney's fee contemplates that counsel for the plaintiff-employee shall continue and is hereby ORDERED to monitor submission of medical expenses to the defendant-employer.
6. The defendant-employer shall pay the costs due the Commission, including an expert witness fee in the amount of $235.00 to Dr. Burke.
This the ___ day of October 2001.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER